UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| PHILLIP WOOD,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FREEMAN DECORATING SERVICES, INC.,<br><br>　　　　　　Defendant. | 3:08-cv-00375-LRH-RAM<br><br>ORDER |

Before the court is Defendant Freeman Decorating Services Inc.'s Motion for Summary Judgment (#26[1]). Plaintiff Phillip Wood has filed an opposition (#29) to which Defendant replied (#32). A hearing was held on February 18, 2010.

**I.      Facts and Procedural History**

This is an employment discrimination dispute arising out of Plaintiff's work as a truck driver in Defendant's Reno, Nevada location. Plaintiff started working for Defendant as a temporary employee through SOS Staffing Services in October of 2005. In April of 2006, Plaintiff began working for Defendant as a full time employee.

**　　　　A.      Discriminatory and Harassing Treatment**

Plaintiff alleges that throughout his time working for Defendant, Defendant's employees made a variety of demeaning comments and engaged in discriminatory behavior based on his status as an American Indian. For example, Plaintiff testified that, on a daily basis, Derrick Carpenter, the loading dock supervisor, referred to him as a "fucking prairie nigger" and other

---

[1] Refers to the court's docket entry number.

terms involving the words "nigger" and "injun." (Pl.'s Opp. (#29), Ex. 2C at 280:19-23, 282:1-9, 284:21-24.) In addition, Plaintiff testified that Randy Porter, a freight supervisor, would introduce him to clients as "one of our wagon burners." (*Id.*, Ex. 2C at 270:10-24.) Plaintiff also testified that Justin Kroger, another freight supervisor, called him an "injun" and a "wagon burner," and James Dunbar, the warehouse manager, frequently called him an "injun." (*Id.*, Ex. 2B at 231:8-23; Ex. 2C at 357:1-7 .)

Plaintiff's wife testified that she personally witnessed Porter and Carpenter call Plaintiff "injun, fucking injun, [and] prairie nigger."[2] (*Id.*, Ex. 1 at 29:9-23.) Dennis Gett, an employee of Defendant, testified that he witnessed Dunbar yell at Plaintiff, "You're nothing but a fucking truck driver. I don't need you to fucking think. You're a stupid fucking Indian and I will tell you what to think." (*Id.*, Ex. 3 at 10:10-16.) Six to nine months later he again heard Dunbar yell at Plaintiff, stating, "You'll never be anything but a fucking truck driver and I don't need a stupid fucking prairie nigger telling me how to run my warehouse." (*Id.*, Ex. 3 at 12:20-13:12.) He further testified that on approximately twelve to fifteen different occasions each, he heard Kroger and Porter use the terms "wagon burner" and "Tonto" in Plaintiff's presence. (*Id.*, Ex. 3 at 87:23-88:21.)

Similarly, Kara Porter, Randy Porter's ex-wife, testified that when Randy Porter first introduced her to Plaintiff he stated, "[T]his is Phil Wood. Gerald hired another wagon burner." (*Id.*, Ex. 4 at 7:17-19.) Additionally, she testified that Porter stated, in front of Plaintiff and other employees of Defendant and in reference to attending a Native American festival Plaintiff invited him to, "I'll be the only white person amongst all of the God damn wagon burners." (*Id.*, Ex. 4 at 12:13-13:11.) She also testified that Porter gave Gerald Bear, a Native American, a box containing a picture of an Indian on a horse with the term "wagon burner" written above it. (*Id.*, Ex. 4 at 25:12-16.)

---

[2] In his opposition, Plaintiff also cites the deposition testimony of his wife indicating that Plaintiff told her that on his first day of work with Defendant, Porter said to him, "[O]h, no, not another fucking injun." (Pl.'s Opp. (#29), Ex. 1 at 33:20-24.) This is inadmissible hearsay for which Plaintiff has failed to identify an applicable exception.

1    In addition to this conduct, Plaintiff has presented evidence indicating that (1) Bear's
2 freight desk contained a picture depicting a burning wagon with the term "wagon burner" written
3 on it, (2) Kroger gave him a t-shirt that said "wagon burner," and (3) someone left an article from
4 a newspaper on his desk referring to oral sex. (*Id.*, Ex. 1 at 28:3-5; Ex. 2B at 172:2-16; Ex. 2C at
5 347:15-25; Ex. 5.)
6    Plaintiff testified that he regularly complained to his supervisors about these statements
7 and conduct, but nothing was done. Plaintiff noted in particular that when he complained to
8 Bear, Bear indicated that was just the way it was, and Plaintiff would have to work around it.
9 Plaintiff also twice called the number provided in the employee handbook to report
10 discrimination and left a message, but he received no response.
11    In February of 2007, Plaintiff complained about "verbal, antagonistic, demoralizing and
12 down right rude" behavior by Dunbar. (Def.'s Mot. Summ. J. (#26), Ex. I.) As a result of
13 Plaintiff's complaint, Defendant suspended Dunbar without pay for one week.
14    Plaintiff continued to suffer harassment and, feeling that nothing was being done about
15 his harassing treatment, he obtained counsel. In November of 2007, Plaintiff's counsel sent
16 Defendant a letter outlining the demeaning treatment Plaintiff had suffered. In response, the Vice
17 President of Employee Relations and Recruiting launched an investigation into Plaintiff's
18 complaints. The outcome of the investigation is not clear.[3]
19    Also in November of 2007, Plaintiff complained about inappropriate conduct by Porter.
20 After investigating Plaintiff's allegations and disciplining the necessary employees, Human
21 Resources required all employees at its Reno branch to attend harassment training.
22    **B.    Plaintiff's Termination**
23    From mid-November to mid-December of 2007, Plaintiff was placed on light-duty work
24 because of a knee injury. As a result of the knee injury, Plaintiff took medical leave from

---

[3]In his opposition, citing his complaint, Plaintiff states that as a result of the investigation, one employee was suspended for thirty days and another supervisor had received a written reprimand. However, allegations made in the complaint are not admissible evidence upon which Plaintiff can rely in his opposition.

1  January of 2008, to April of 2008, for a total of sixteen weeks.

2      The parties dispute whether Plaintiff was able to return to work after he had exhausted the
3  sixteen weeks of leave.  On April 9, 2008, Plaintiff underwent a physical examination, and
4  Plaintiff's doctor concluded that he should continue to be on restricted duty.[4]

5      Defendant contends that, in violation of company policy, Plaintiff failed to produce a
6  statement from his physician indicating that he was capable of returning to work and performing
7  the essential functions of his position.  (*See* Def.'s Mot. Summ. J. (#26), Ex. K, FREE122.)
8  Defendant also notes that Plaintiff himself testified that he was not able to return to work and
9  drive a truck.  (*Id.*, Ex. A at 156:12-14.)

10      On April 14, 2008, Defendant sent Plaintiff a letter indicating that he was to return to
11  work on April 28, 2008.  At that time he was to bring a release from his doctor indicating that he
12  could return to work.  It appears that Plaintiff either did not come to work on April 28, 2008, or
13  was unable to obtain a full release from his doctor.  As a result, because it believed Plaintiff was
14  unable to return to work and perform his duties, Defendant terminated Plaintiff on April 28,
15  2008.

16      **C.**    **Charges of Discrimination**

17      Plaintiff filed two separate charges of discrimination.  The first charge of discrimination,
18  filed with the Nevada Equal Rights Commission on November 29, 2007, alleges that Defendant's
19  employees (1) referred to Plaintiff with "derogatory, discriminatory and prejudicial names
20  including but not limited to, 'fuck'n injun,' 'prairie nigger,' 'injun' and 'wagon burner[,]'" (2)
21  forced him to use a desk that had a poster attached to it depicting a wagon on fire and with the
22  words "Wagon Burner," and (3) introduced him to clients as "one of our wagon burners" or

---

[4] Again citing his complaint, Plaintiff states that he returned to work and worked full days on April 10 and 11, 2008, preparing a "full dock of received freight for distribution to Defendant's scheduled show." (Pl.'s Opp. (#29) at 4.)  Plaintiff further states that he returned to work on April 14, 2008.  As noted, the allegations in the complaint are not evidence upon which Plaintiff can rely in opposing summary judgment.

Plaintiff also cites his affidavit for the proposition that, within one hour of returning to work on April 14, 2008, he was sent home and told not to return to work until April 28, 2008.  However, Plaintiff's affidavit contains no such statement.

1  "stupid injun." (Def.'s Mot. Summ. J. (#26), Ex. X.)  In the charge, Plaintiff further alleges that
2  he had repeatedly complained about this conduct, and as a result of his complaints, Defendant
3  retaliated against him.
4      On March 26, 2008, Plaintiff filed a second charge with the Nevada Equal Rights
5  Commission asserting the same allegations as those in his November 29, 2007, charge.  In
6  addition, Plaintiff attached notes to the charge primarily discussing Defendant's investigation
7  into the November charge.
8      On April 11, 2008, the Equal Employment Opportunity Commission ("EEOC") issued a
9  Notice of Charge of Discrimination to Defendant's Director of Human Resources in Dallas,
10 Texas.  It is not clear when Defendant received the notice.  On May 6, 2008, the EEOC issued a
11 right to sue letter.
12     Plaintiff filed suit on July 8, 2008.  In the complaint, Plaintiff alleges the following two
13 claims for relief: (1) hostile work environment and (2) retaliation.
14 **II.    Legal Standard**
15     Summary judgment is appropriate only when "the pleadings, depositions, answers to
16 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
17 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
18 of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence,
19 together with all inferences that can reasonably be drawn therefrom, must be read in the light
20 most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*
21 *Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,
22 1154 (9th Cir. 2001).
23     The moving party bears the burden of informing the court of the basis for its motion,
24 along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*
25 *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the
26 moving party must make a showing that is "sufficient for the court to hold that no reasonable
27 trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d
28 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.

Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

### III. Discussion

As noted, Plaintiff asserts claims for hostile work environment harassment and retaliation. Defendant seeks summary judgment with regard to each of these claims.

#### A. Hostile Work Environment

Although not explicitly included in the text of Title VII, claims based on a hostile work environment fall within Title VII's protections. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). To survive summary judgment on a hostile work environment claim, "[a plaintiff] must raise a triable issue of fact as to whether (1) [he] was 'subjected to verbal or physical conduct' because of [his] race [or national origin], (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work environment.'" *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003) (*quoting Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)).

Defendant contends that the hostile work environment claim must fail because Plaintiff cannot demonstrate that the comments and conduct were based on Plaintiff's race or national origin. In particular, Defendant argues that, although Plaintiff now claims to be American Indian, he (1) has no evidence establishing himself as American Indian and (2) has previously

1  identified himself as Hispanic rather than American Indian.

2  As a preliminary matter, the court notes that there are issues of fact as to whether Plaintiff
3  is American Indian.  Neither Plaintiff's birth certificate, which states that Plaintiff is "white[,]"
4  nor Plaintiff's previous reporting on employment and other records describing himself as
5  Hispanic and white are dispositive.  *See Perkins v. Lake County Dep't of Utilities*, 860 F. Supp.
6  1262, 1277 (N.D. Ohio 1994).  It is not surprising that Plaintiff does not have definitive proof of
7  his ancestry, and the evidence suggests that throughout his employment with Defendant, both
8  Plaintiff and Defendant's employees believed that Plaintiff was American Indian.  *See id.*
9  (discussing difficulties American Indians face in establishing their race or national origin).
10  Accordingly, the court finds that the Defendant has not established as a matter of law that
11  Plaintiff is not American Indian.

12  More importantly, even if Defendant's employees mistakenly believed that Plaintiff was
13  American Indian, Defendant may nonetheless be liable for hostile work environment
14  harassment. "[P]laintiffs who are not members of [a] protected class have standing to challenge
15  racially discriminatory conduct in their own right when they are the direct target of
16  discrimination." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1055 (9th Cir. 2002) (*citing*
17  *Estate of Amos v. City of Page*, 257 F.3d 1086, 1093-94 (9th Cir. 2001); *Maynard v. City of San*
18  *Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) (noting that Title VII "grants special protection to
19  whites who are denied association with members of other groups because of an employer's
20  discriminatory practices.").  Here, regardless of Plaintiff's precise ethnic makeup, it is undisputed
21  that during his employment with Defendant, Plaintiff identified himself with American Indian
22  culture and heritage, and Defendant's employees believed him to be American Indian.  As a
23  result of his association with American Indians, Defendant's employees directly subjected
24  Plaintiff to harassing and demeaning conduct.

25  Further, in the context of an equal protection claim brought under 42 U.S.C. § 1983, the
26  Ninth Circuit has held that a white plaintiff had standing to sue where the defendant mistakenly
27  believed that the plaintiff was American Indian.  *See Amos*, 257 F.3d at 1093-94.  In *Amos*, the
28  plaintiff alleged that he was the "direct target of discrimination based upon mistaken racial

1  identity." *Id.* at 1094.  The court stated, "That [plaintiff] was actually white does not make [discrimination based upon mistaken racial identity] or its resulting injury less direct.  Thus, for purposes of standing, [the plaintiff] should be viewed as [the plaintiff] alleges the police officers viewed him: as a Native American." *Id.*

Similarly, in *Perkins*, the plaintiff alleged discrimination on the basis of his race, American Indian.  The defendants disputed whether the plaintiff was actually of American Indian descent and contended that because Plaintiff could not establish that he was American Indian, his discrimination claim must fail.  The court held, "In the opinion of this court, it is the employer's reasonable belief that a given employee is a member of a protected class that controls the issue." 860 F. Supp. at 1277.  Because the employer believed that the plaintiff was American Indian, the court denied the employer's motion for summary judgment.

Here, as in *Amos* and *Perkins*, it appears that Defendant's employees believed that Plaintiff was American Indian, and Plaintiff was the direct target of discrimination.  The alleged discrimination is "no less malevolent because it [may have been] based on an erroneous assumption." *Amos*, 257 F.3d at 1094.[5]  Because Defendant does not seek summary judgment on any other grounds, the court will deny the motion for summary judgment as to the hostile work environment claim.

---

[5]Defendant contends that *Perkins* and the other cases upon which Plaintiff relies are inapplicable because these cases involve discriminatory treatment claims rather than hostile work environment claims.  At oral argument, counsel argued that hostile work environment claims are distinguishable because they require the conduct to be both objectively and subjectively offensive.  However, Plaintiff has submitted evidence indicating that he found the comments offensive, and Defendant does not appear to dispute that the comments were objectively offensive.  Under these circumstances, the court sees no reason why the reasoning of the discriminatory treatment cases as to the racial identity of the plaintiff should not apply equally to hostile work environment claims.

Defendant's reliance on *Brewer v. Hill* is also unavailing.  No. 06-13549, 2000 Mich. App. LEXIS 1033 (Sept. 15, 2000).  There, the Michigan Court of Appeals questioned the sufficiency of the plaintiff's evidence demonstrating his status as a Native American.  However, the court explicitly refrained from deciding whether the evidence the plaintiff provided was sufficient.  *See id.* at *18-19 ("'Although we question whether plaintiff [established that he was a member of a protected class], we need not decide the issue . . . .'")

Finally, the remaining cases to which Defendant cites are distinguishable because, unlike in this case, in those cases the plaintiffs were not the direct targets of discrimination.  *See, e.g., Patee v. Pac. Nw. Bell Tel. Co.*, 803 F.2d 476, 478-79 (9th Cir. 1986).

**B.     Retaliation**

Plaintiff next alleges Defendant retaliated against him for complaining about the harassing and discriminatory treatment. Under Section 2000e-3(a) of Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) *(citing Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a discriminatory motive. *Id.*

Plaintiff alleges Defendant retaliated against him by (1) terminating him and (2) subjecting him to a hostile work environment. The court will address each of these theories below.

**1.     Termination**

Defendant first argues that, with regard to his termination, Plaintiff has failed to exhaust his administrative remedies. In particular, Defendant contends Plaintiff cannot base his retaliation claim on his termination because he filed the charge on March 26, 2008, before he was terminated.

Generally, an employee may seek judicial relief only for incidents listed in his original charge of discrimination. *See Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984). However, even where a claim is not included in the original charge of discrimination, a district court can nonetheless hear the claim if the claim "[falls]

within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997) (citation omitted). In making its determination, the court must construe the EEOC charge with "utmost liberality." *Id.* (citation omitted).

In his charges of discrimination, Plaintiff alleges that, since he began working for Defendant, Defendant's employees referred to him in derogatory terms and engaged in other demeaning conduct. In addition, he alleges that he reported this treatment and was retaliated against for doing so. Although Plaintiff's termination occurred after Plaintiff filed the second charge of discrimination, the court finds that the termination nonetheless falls within the scope of the charge. Considering the nature of Plaintiff's complaints and the fact that the termination took place less than a month after Plaintiff filed his second charge, it is reasonable to expect that an investigation into the termination could have grown out of the EEOC's investigation into the allegations contained in the charge. Accordingly, the court finds that Plaintiff has exhausted his administrative remedies with regard to his termination-based retaliation claim.[6]

For the purposes of the motion for summary judgment, Defendant appears to concede that Plaintiff has established a prima facie case of retaliation. As noted, where a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a discriminatory motive. *Id.*

---

[6]Upon filing his second charge on March 26, 2008, Plaintiff immediately requested a right to sue letter. As a result, on April 11, 2008, the EEOC recommended that Plaintiff's charges be dismissed or closed. The request was granted on April 21, 2008, and no investigation into Plaintiff's allegations was ever conducted. Nonetheless, the lack of an actual EEOC investigation should not prevent Plaintiff from asserting a retaliation claim based on his termination. As noted, Plaintiff's termination relates in both time and substance to the allegations in the charges in discrimination. Requiring the plaintiff to file an additional charge of discrimination based on conduct directly related to the allegations in the original charge after the plaintiff has initiated legal action against the defendant would be redundant and unnecessary.

1    Defendant contends that it terminated Plaintiff pursuant to company policy because he
2 was unable to return to work as a truck driver. Plaintiff does not dispute that, on its face, this is a
3 legitimate, nondiscriminatory reason for his termination. Instead, Plaintiff argues Defendant's
4 reason is a "veiled attempt to cover up Defendant's discriminatory actions." (Pl.'s Opp. (#29) at
5 12.)
6    To demonstrate that Defendant's reason was a pretext for its true discriminatory motive,
7 Plaintiff notes that he was, in fact, able to return to work. However, although Plaintiff could
8 work in some capacity, he does not dispute that his physician did not clear him to drive a truck.
9 Thus, this evidence does not suggest that Defendant terminated Plaintiff for any reason other than
10 his inability to perform the essential duties of his position as a truck driver.
11    Further, the timing of Plaintiff's termination does not create an inference of
12 discrimination. Over five months lapsed between Plaintiff's original charge of discrimination,
13 filed in November of 2007, and his termination at the end of April, 2008. Although timing alone
14 can suggest a discriminatory motive, "to support an inference of retaliatory motive, the
15 termination must have occurred fairly soon after the employee's protected expression."
16 *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (internal quotation
17 marks and citation omitted). After Plaintiff initially complained about the harassment, he
18 worked for approximately one month and then was essentially absent from work until his
19 termination. Under the circumstances presented in this case, the court finds that the five-month
20 interval between Plaintiff's protected expression and his termination is too long to raise an
21 inference of discrimination.
22    As to Plaintiff's second charge of discrimination, Defendant has presented evidence
23 indicating that the individuals responsible for the decision to terminate Plaintiff did not know
24 that Plaintiff had filed the charge of discrimination. Plaintiff has failed to present any evidence
25 rebutting this contention. Although, as Plaintiff notes, the EEOC issued a notice of the charge of
26 discrimination on April 11, 2008, there is no evidence of when Defendant received this letter and
27 which, if any, of Defendant's employees knew of the letter. Accordingly, the court finds that,
28 based on the evidence before the court, no reasonable jury could conclude that Defendant

terminated Plaintiff because he complained about the harassing conduct. Summary judgment with regard to Plaintiff's termination-based retaliation claim is therefore appropriate.

### 2. Hostile Work Environment

As to Plaintiff's hostile work environment-based retaliation claim, Defendant argues Plaintiff cannot demonstrate that he suffered an adverse employment action. In the retaliation context, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). While a prima facie case of Title VII's substantive provision (anti-discrimination) and a prima facie case of retaliation both require an adverse employment action, the two terms are not coterminous. *Id.* at 67. Instead, "the scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.*

In the Ninth Circuit, harassment by co-workers may constitute an adverse employment action. *See Ray* 217 F.3d at 1245. To be actionable, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted). The harassment must be both objectively and subjectively offensive, and to determine whether an environment is sufficiently hostile, the court looks to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

Plaintiff argues that, in retaliation for his reporting the alleged harassment, Defendant's employees engaged in the following conduct: (1) engaging in a "daily onslaught of racial slurs and discriminating behaviors"; (2) verbally reprimanding Plaintiff; (3) forcing Plaintiff to work on a freight desk with a demeaning picture, leaving Plaintiff an offensive article, and giving Plaintiff a t-shirt with a hostile picture; and (4) ostracizing and restricting Plaintiff. (Pl.'s Opp. (#29) at 18-19.)

The evidence suggests that after Plaintiff reported the harassment and Defendant

conducted an investigation into Plaintiff's allegations, the harassing and demeaning conduct continued.  Viewed in the light most favorable to Plaintiff, the court finds that issues of fact remain as to whether this conduct was sufficiently severe and pervasive to create an abusive working environment.  Likewise, in light of the timing of the complaint and the continued harassment, the court finds that there are issues of fact concerning the causal connection between Plaintiff's complaints and the allegedly hostile work environment.  Accordingly, the court will deny summary judgment as to Plaintiff's hostile work environment-based retaliation claim.[7]

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#26) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial order within thirty (30) days from entry of this Order.  *See* Local Rules 16-4 and 26-1 (e)(5).

IT IS SO ORDERED.

DATED this 19th day of February, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[7] Because the court has concluded that summary judgment is appropriate on the termination-based retaliation claim, the court need not consider the damages issue Defendant raises in its motion.